

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 21, 2023

**BY ECF**
The Honorable John P. Cronan
United States District Judge
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Andre Delacruz*, 22 Cr. 150 (JPC)

Dear Judge Cronan:

      The Government respectfully submits this letter in advance of sentencing. A sentence of at least 57 months' imprisonment—which is the bottom of the Guidelines range calculated by Probation—but no more than 77 months' imprisonment—which was the sentence imposed on codefendant Edwin Acevedo—would be sufficient but not greater than necessary to serve the purposes of sentencing.

## I. OFFENSE CONDUCT

      From May 2020 to March 2022, law enforcement officers investigated a drug trafficking organization (the "DTO") that operated in the vicinity of Belmont Avenue and East Tremont Avenue in the Bronx. The DTO sold cocaine, cocaine base, and what it marketed as heroin (the "dope" sold by the DTO often contained fentanyl). During the course of controlled purchases by law enforcement, members of the DTO sold approximately 53 grams of fentanyl and approximately 48 grams of cocaine base. (PSR ¶ 14).

      The defendant was involved with the DTO's activities starting at the latest in September 2021, when law enforcement began making controlled purchases from the defendant. During the course of the investigation, the defendant engaged in at least two direct sales to law enforcement, selling over one gram of cocaine base. (PSR ¶ 19).

      The defendant also worked with others in the DTO. For example, during a September 9, 2021 controlled purchase, after Acevedo sold cocaine base to a confidential source acting at the direction of law enforcement (the "CS"), the CS told Acevedo that the CS wanted additional cocaine base, and, in response, Acevedo called the defendant, who arrived and sold additional cocaine base to the CS. (PSR ¶ 20).

      On March 14, 2022, in connection with the defendant's arrest, law enforcement officers conducted a consent search of the defendant's bedroom. Law enforcement recovered one small baggie of a substance that tested positive for cocaine base and 87 small glassines of a substance that tested positive for fentanyl. Law enforcement also recovered the following ammunition,

which the defendant possessed in his residence in the Bronx: five Starline .38 special case cartridges and six Shell Shock Technologies 9mm Luger case cartridges. (PSR ¶ 21).

## II. GUILTY PLEA AND GUIDELINES RANGE

The defendant was charged with conspiring to distribute and possess with intent to distribute 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B) ("Count Two"). (PSR ¶ 3).[1]

On December 1, 2022, the defendant pled guilty to the lesser-included offense under Count Two of conspiring to distribute and possess with intent to distribute a quantity of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). (PSR ¶ 6). In connection with the defendant's plea, the Court entered a consent preliminary order of forfeiture and money judgment, which called for the defendant to pay a money judgment of $200. (Dkt. 68).

The plea agreement stipulated that, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(8), because the offense and its relevant conduct involved 53.5 grams of fentanyl and 48.5 grams of cocaine base—that is, at least 100 kilograms but less than 400 kilograms of Converted Drug Weight—the base offense level was 24. The plea agreement contained a "carveout" on whether the defendant was a career offender under the Guidelines given a disagreement over whether the defendant's convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39, were controlled substance offenses under the Guidelines. After the reduction for acceptance of responsibility, the plea agreement stipulated that, if the defendant were not a career offender, then the offense level was 21, and, if the defendant were a career offender, then the offense level was 29. The plea agreement calculated seven criminal history points for the defendant, placing him in Criminal History Category IV if he were not a career offender, and placing him in Criminal History Category VI if he were a career offender. Accordingly, the plea agreement calculated a Guidelines range of 57 to 71 months if the defendant were not a career offender, and 151 to 188 months if he were a career offender, thus stipulating a Guidelines range of 57 to 188 months. (PSR ¶ 7).

The PSR, like the plea agreement, calculated a base offense level of 24. (PSR ¶ 41). The PSR took the position that, in light of *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022), *adhered to on reh'g*, 60 F.4th 720 (2d Cir. 2023), the defendant's convictions for criminal sale of a

---

[1] The defendant was not charged in Count One of the Indictment, which charged conspiring to distribute and possess with intent to distribute 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), because, at the time that the Government presented the case to the grand jury, the Government did not have evidence connecting the defendant to the fentanyl conspiracy (as opposed to the crack cocaine conspiracy). As described above, however, on the day of the defendant's arrest, law enforcement recovered from his bedroom 87 small glassines of a substance that tested positive for fentanyl.

controlled substance in the third degree, in violation of New York Penal Law Section 220.39, were not controlled substance offenses under the Guidelines, and thus that the defendant was not a career offender under the Guidelines. (PSR p. 21). After the reduction for acceptance of responsibility, the PSR calculated an offense level of 21. (PSR ¶ 50). The PSR calculated nine criminal history points for the defendant,[2] placing him in Criminal History Category IV. (PSR ¶ 56). Accordingly, the PSR calculated a Guidelines range of 57 to 71 months. (PSR ¶ 101). Probation recommended a sentence of 57 months' imprisonment. (PSR p. 23).

The defense argued that, in light of *Gibson*, the defendant's convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39, were not controlled substance offenses under the Guidelines, and thus that the defendant was not a career offender under the Guidelines. (Dkt. 140 at 3). Accordingly, the defense calculated a Guidelines range of 57 to 71 months. (Dkt. 140 at 4). The defense requested a sentence below that Guidelines range. (Dkt. 140 at 4).

In the Government's view, notwithstanding *Gibson*, the defendant's convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39, are controlled substance offenses under the Guidelines, and thus the defendant is a career offender under the Guidelines. In *Gibson*, the Second Circuit concluded that the federal controlled substances schedules are categorically narrower than the New York state drug schedules because the federal schedules do not include naloxegol. 55 F.4th at 166. And in the *Gibson* rehearing opinion, the Second Circuit rejected the view that that conclusion was merely dictum rather than holding. 60 F.4th 720 (Mem.). But, in the Government's view, that conclusion, even if holding rather than dictum, is simply law of the case and is not precedential more broadly. That is because, in *Gibson*, the Government did not contest that the federal schedules' omission of naloxegol rendered the federal schedules narrower than the state schedules. *See* 55 F.4th at 158-59. Absent binding precedent to the contrary, this Court is free to conclude that the federal controlled substances schedules are *not* categorically narrower than the New York state drug schedules, notwithstanding the federal schedules' omission of naloxegol. The Government urges the Court to reach that conclusion for the reasons set forth in the Government's January 4, 2023 sentencing submission in *United States v. Forde*, 20 Cr. 557 (AT), Dkt. 72 at 8-11.[3] Accordingly,

---

[2] The plea agreement calculated seven criminal history points as opposed to nine criminal history points because of an apparent discrepancy with respect to the sentence imposed in connection with the defendant's July 21, 2017 conviction in Bronx County Supreme Court for attempted robbery in the second degree, aided by another, in violation of New York Penal Law Section 160.10(1). The rap sheet available to the Government reflects that the defendant was sentenced to two years' supervision, so the plea agreement assigned that sentence one criminal history point, whereas the PSR states that the defendant was sentenced to two years' imprisonment, so the PSR assigned that sentence three criminal history points. (PSR ¶ 53). Under either calculation, however, the defendant was in Criminal History Category IV if he were not a career offender. (*See* PSR ¶ 146).

[3] That said, the Government is aware that in other cases this Court has concluded that the federal controlled substances schedules are categorically narrower than the New York state drug schedules for a separate reason: Because this Court has determined that the federal schedules omit certain

because, in the Government's view, the defendant is a career offender under the Guidelines, the Government calculates a Guidelines range of 151 to 188 months, but the Government adheres to the plea agreement's stipulated Guidelines range of 57 to 188 months. The Government recommends a sentence that is within that stipulated Guidelines range—namely, a sentence that is at least 57 months and at most 77 months.

### III. CODEFENDANTS' SENTENCES

The Government's investigation did not uncover a clear hierarchy within the DTO.

Acevedo was sentenced to 77 months' imprisonment. (Dkt. 117). The Court calculated Acevedo's Guidelines range as 77 to 96 months' imprisonment. Like the defendant (if the defendant were not a career offender), Acevedo's offense level, under the Court's calculations, was 21. As compared to the defendant's seven to nine criminal history points, which, in either case, are based on three convictions and place the defendant in Criminal History Category IV if he were not a career offender, Acevedo had 27 criminal history points, based on 38 convictions, which placed him in Criminal History Category VI if he were not a career offender. (*See* Dkt. 112 at 2-3).

Daniel Peralta was sentenced to 24 months' imprisonment. (Dkt. 128). Like the defendant (if the defendant were not a career offender), Daniel Peralta's offense level was 21. Unlike the defendant, however, Daniel Peralta had no criminal history points and was in Criminal History Category I, and Daniel Peralta's Guidelines range was 37 to 46 months' imprisonment. (*See* Dkt. 125 at 2).

In the Government's view, the defendant is more culpable than Daniel Peralta but not more culpable than Acevedo, particularly in terms of the specific-deterrence and incapacitation purposes of sentencing. Although at the time the Government charged the case, the defendant had engaged in only two direct sales to law enforcement of just over one gram of cocaine base in total, at the time of the defendant's arrest, law enforcement recovered from his bedroom 1 small baggie of a substance that tested positive for cocaine base, 87 small glassines of a substance that tested positive for fentanyl, 5 cartridges of one type of ammunition, and 6 cartridges of another type of ammunition. That recovery suggests not only that the defendant was an active participant in the DTO, but also that he may have possessed firearms in furtherance thereof. Moreover, although two of the defendant's prior convictions are for trafficking narcotics (PSR ¶¶ 52, 54), his third prior conviction is for an incident where the defendant allegedly struck a victim on the side of the head with a handgun and removed the victim's cellphone (PSR ¶ 53).

---

isomers of cocaine that the state schedules include. *See, e.g.*, *United States v. Gutierrez-Campos*, No. 21 CR. 40 (JPC), 2022 WL 281582, at *14 (S.D.N.Y. Jan. 31, 2022). The Government respectfully disagrees with that conclusion, which is the subject of appeal.

## IV. DISCUSSION

In this case, the combination of the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct weighs in favor of a sentence of at least 57 months' imprisonment—which is the bottom of the Guidelines range calculated by Probation—but no more than 77 months' imprisonment—which was the sentence imposed on Acevedo.

A substantial sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. Over the course of approximately six months, the defendant worked with others to distribute dangerous drugs in the Bronx, including at least 53 grams of fentanyl, a notoriously dangerous substance.

> Fentanyl is now the leading cause of death for Americans ages 18 to 49, according to a [Washington] Post analysis. . . . The American fentanyl crisis deepened during the coronavirus pandemic. From 2019 to 2021, fatal overdoses surged 94 percent, and an estimated 196 Americans are now dying each day from the drug—the equivalent of a fully loaded Boeing 757-200 crashing and killing everyone on board.

Miroff, et al., "Cause of death: Washington faltered as fentanyl gripped America," Washington Post (Dec. 12, 2022), available at https://www.washingtonpost.com/investigations/interactive/2022/dea-fentanyl-failure. As Probation put it, the defendant's "criminal activity continues to be significant, having distributed a substantial amount of potent and life-ruining drugs, coupled with possessing several rounds of ammunition." (PSR p. 24).

A substantial sentence is also necessary given the history and characteristics of the defendant, to afford adequate deterrence to criminal conduct, both for the defendant specifically and for society generally, and to protect the public from further crimes of the defendant. As Probation pointed out, the defendant's "prior felony convictions were for offenses involving drug distribution and attempted robbery," the "[s]entences for these convictions ranged from two years up to three years' imprisonment," and the defendant "has had several serious run-ins with the law since he was a teenager, and it appears that prior sentences were not enough to deter him from continuing a life of crime." (PSR p. 24). The defendant and others who engage in the trafficking of dangerous substances must understand that their actions negatively impact our communities, and that those who perpetuate the drug problem in this Country will be punished appropriately.

The Government acknowledges the mitigating factors marshaled by the defense—specifically, the defendant's difficult upbringing and his mental health and substance abuse issues. (*See generally* Dkt. 140). For the reasons set forth above, however, the defense's requested sentence of less than 57 months' imprisonment would not be sufficient to serve the retributive, deterrent, and incapacitation purposes of sentencing.

That said, given that Acevedo's criminal history is worse than the defendant's, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct counsels in favor of a sentence of no more than 77 months, which was the sentence imposed on Acevedo.

## V. CONCLUSION

A sentence of at least 57 months' imprisonment—which is the bottom of the Guidelines range calculated by Probation—but no more than 77 months' imprisonment—which was the sentence imposed on Acevedo—would be sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: *Samuel P. Rothschild*
Samuel P. Rothschild
Assistant United States Attorney
(212) 637-2504

cc: Christopher Wright, Esq. (by ECF)